UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED
MAR 31 2004
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA

| | |
|---|---|
| VIRGINIA JONES, f/k/a VIRGINIA D. JACKSON, | ) ) ) |
| Plaintiff, | ) ) |
| vs. | ) ) Civil Action No. CV-02-S-1235-NE |
| PRIMERICA LIFE INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION

Virginia Jones, who formerly was known as Virginia D. Jackson ("plaintiff"), asserts claims for breach of contract and bad faith based on the failure of defendant, Primerica Life Insurance Company ("Primerica" or "defendant"), to pay life insurance benefits claimed under the terms of a policy on which plaintiff was named as the beneficiary.[1] Defendant asserts a counterclaim for a judgment declaring that, among other things, it was entitled to refuse payment of plaintiff's claim.[2] The action presently is before the court on defendant's motion for summary judgment on all of plaintiff's claims, as well as its counterclaim. Upon consideration of the pleadings,

---

[1] *See* doc. no. 1 (complaint), appended to Notice of Removal. Plaintiff's state court complaint also asserted claims for breach of contract and bad faith against Pearline Douglas, the Primerica agent who sold Horton the policy. However, Douglas was dismissed as a party on December 12, 2002. *See* doc. no. 13.

[2] *See* doc. no. 2 (answer and counterclaim).

evidentiary submissions, and briefs, the court concludes the motion is due to be granted.

## I. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides, in part, that summary judgment not only is proper, but also that it "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986).

> In making this determination, the court must review all evidence and make all reasonable inferences in favor of the party opposing summary judgment.
>
> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc) (quoting

*Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc). The motion pierces the pleadings, and "strikes at the heart of the claim. In effect it argues that as a matter of law upon admitted or established facts the moving party is entitled to prevail." Charles Alan Wright, *The Law of Federal Courts* § 99, at 705 (5th ed. 1994).

## II. STATEMENT OF FACTS

Defendant issued Policy Number 0420662890 ("the policy"), insuring the life of Bonnie Horton, during June of 1989.[3] Horton's sister (plaintiff in these proceedings) paid the premiums on the policy[4] and also was the sole named beneficiary.[5] The policy lapsed in August of 1998, however, due to non-payment of premiums.[6] When plaintiff learned that the policy had lapsed, she contacted Pearline

---

[3] *See* doc. no. 18 (plaintiff's evidentiary submission), Attachment C, Exhibit 3, at document bearing Bates Stamp number Primerica 00007 (application for insurance policy). Defendant alleges that the policy was first issued in *August* of 1989. *See* doc. no. 17 (defendant's brief in support of summary judgment), at 2. However, the month in which the original policy was issued is not material to either party's claims. Thus, this fact dispute cannot preclude the entry of summary judgment.

[4] Plaintiff's evidentiary submission, Attachment A (Deposition of Virginia Jones), at 28.

[5] *See* plaintiff's evidentiary submission, Attachment C, Exhibit 3, at document bearing Bates Stamp number Primerica 00007 (application for insurance policy).

[6] Doc. no. 16 (defendant's evidentiary submission), Attachment A (Affidavit of Debra Anderson), at ¶ 6; *see also* Exhibit 2 to Attachment A. Plaintiff asserted in her complaint that the premiums were not timely paid because defendant failed to process her request to change the bank account from which her premium payments were automatically deducted. Complaint, at ¶ 6. Plaintiff asserted, therefore, that defendant cancelled the policy (or, in other words, that the policy lapsed) "without legal justification." *Id.* However, plaintiff raises no such claim in her brief, despite

Douglas, the Primerica agent who originally sold the policy to Horton, to express her interest in having the policy reinstated. It is unclear from the record exactly when this contact occurred, but it was no later than February of the following year, 1999.[7] Douglas asked plaintiff a number of questions about Horton's health, and plaintiff assured Douglas that no changes in Horton's health had occurred since Horton submitted her original application for insurance in 1989.[8] Plaintiff agreed to leave a cancelled check at Horton's home, so that when Douglas met with Horton to complete the reinstatement application, Douglas could retrieve the check and arrange for premium payments to be deducted directly from plaintiff's new bank account.[9] Plaintiff testified at her deposition that she was unsure of the date on which she

---

defendant's arguments that it did process the bank account change request correctly, and that it took every possible step to ensure that the policy did not lapse. Rather, plaintiff simply admits that the policy lapsed "[o]n or about August 12, 1998 ... due to non-payment of the premiums." Doc. no. 19 (plaintiff's brief in response to summary judgment), at 1. Thus, plaintiff has abandoned her argument that defendant is at fault for the policy lapse. *See, e.g., Chapman v. AI Transport,* 229 F.3d 1012, 1027 (11th Cir. 2000) (en banc) ("Parties opposing summary judgment are appropriately charged with the responsibility of marshaling and presenting their evidence before summary judgment is granted, not afterwards."); *Road Sprinkler Fitters Local Union No. 669 v. Independent Sprinkler Corp.,* 10 F.3d 1563, 1568 (11th Cir. 1994) (holding that a district court can "properly treat as abandoned a claim alleged in the complaint but not even raised as a ground for summary judgment") (citing *Lazzara v. Howard A. Esser, Inc.,* 802 F.2d 260, 269 (7th Cir. 1986) (holding that a ground not pressed in opposition to a motion for summary judgment is to be treated by the district court as abandoned)).

[7]*See* Jones Deposition, at 106-07, 127-131; brief in opposition to summary judgment, at unnumbered page 1.

[8]Jones Deposition, at 66.

[9]*Id.* at 102.

actually delivered the cancelled check to Horton's home.[10]

Douglas met with Horton at Horton's home on April 9, 1999, to assist Horton in filling-out the reinstatement application.[11] Douglas asked Horton the questions on the reinstatement form, filled in the boxes on the form to reflect Horton's responses, and even asked some of the questions a second time to ensure that she had prepared the form accurately.[12] The completed form reflects that Horton answered "no" to all of the following questions: (1) "have you . . . been treated for or had any indication of . . . cancer?"; (2) "[a]re you . . . now under observation or receiving treatment for any mental, physical, or nervous condition?"; and (3) "have you . . . [h]ad any checkup or examination, or been a patient in a hospital, clinic, or sanitarium?"[13] Horton then signed the form, which contained the following certifications: (1) "I

---

[10]*Id.* at 127-28.

[11]*See* plaintiff's evidentiary submission, Attachment C, Exhibit 3, at document bearing Bates stamp number Primerica 00005 (signature page of insurance application dated April 9, 1999). Plaintiff's brief states that "[o]n April 9, *1998*, [Douglas] traveled to [Horton's] residence to reinstate the policy." Brief in opposition to summary judgment, at unnumbered page 2 (emphasis supplied). The court construes plaintiff's statement that the application was completed in 1998 as a typographical error, because on April 9, 1998, the policy had not yet lapsed, so Horton could not have filled out a reinstatement application at that time.

[12]Plaintiff's evidentiary submission, Attachment B (Deposition of Pearline Douglas), at 15.

[13]*See* plaintiff's evidentiary submission, Attachment C, Exhibit 3, at document bearing Bates stamp number Primerica 00004 (signature page of insurance application dated April 9, 1999). Defendant also submitted what appears to be a cover sheet of the application form plaintiff completed. On this form, which Horton signed, Horton answered "no" to the following questions: (1) "[h]ave you . . . had any illness, injury, or been treated by any physician since the date of issue of this policy?"; and (2) "[t]o the best of your knowledge and belief, are you . . . in good health and free from any impairments and disabilities?" *See* Anderson Affidavit, at Exhibit 4.

hereby declare and represent that the foregoing answers and statements are correctly recorded to the best of my knowledge and belief . . . ."; and (2) "I represent that the statements and answers in this application are full, complete and true to the best of my knowledge and belief."[14]

Defendant later mailed Horton a letter, dated May 4, 1999, to inform her that it had received her reinstatement application and submitted it for review by its Underwriting Department. The letter reminded Horton that the reinstatement would not be effective until her application had been approved.[15] Defendant in fact approved Horton's application during August of 1999, and her policy was reinstated at that time.[16] The reinstatement policy contained a provision stating that it would not become incontestable until two years after it was reinstated.[17]

Horton died in November of 2000, and plaintiff filed a claim for benefits under the policy in December of 2000.[18] Because Horton died during the two-year contestability period of the policy, defendant was required to conduct a routine investigation before it could agree to pay any benefits to plainitff.[19] During the course

---

[14] *See* plaintiff's evidentiary submission, Attachment C, Exhibit 3, at document bearing Bates stamp number Primerica 00005 (signature page of insurance application dated April 9, 1999).

[15] Anderson Affidavit, at Exhibit 5.

[16] *Id.* at ¶ 9; Exhibit 2.

[17] *See* plaintiff's evidentiary submission, Attachment C, Exhibit 4, at document bearing Bates Stamp number Primerica 000532 (provisions of insurance policy).

[18] Anderson Affidavit, at ¶ 9.

[19] *Id.* at Exhibit 6.

of its investigation, defendant obtained medical records from Dr. John Waples at Huntsville Hospital, who had treated Horton before her death.[20] The records revealed that, no later than March 20, 1999, Horton had been diagnosed with acute myelogenous leukemia, a type of cancer; that she was undergoing treatments for the condition, including chemotherapy; and that she was being considered for a bone marrow transplant.[21]

Defendant denied plaintiff's claim on May 1, 2001, after it discovered Horton's history of leukemia. Defendant explained that it would not have approved Horton's application for reinstatement if Horton had disclosed her condition on the application. Because defendant concluded that it never should have reinstated Horton's policy, it refunded to plaintiff all premiums she had paid since the date of reinstatement.[22] At the time of her deposition on April 1, 2003, plaintiff had not cashed the refund check she received from defendant.[23]

### III. DISCUSSION

A.   **Plaintiff's Claims**

   1.   **Breach of contract**

---

[20] *Id.* at ¶ 11.
[21] *Id.* at Exhibit 7.
[22] *Id.* at Exhibit 8.
[23] Jones Deposition, at 138.

To establish a breach of contract claim under Alabama law, plaintiff must prove: "(1) the existence of a valid contract binding the parties in the action, (2) [her] own performance under the contract, (3) the defendant's nonperformance, and (4) damages." *Congress Life Insurance Co. v. Barstow,* 799 So. 2d 931, 937 (Ala. 2001) (bracketed alteration in original) (citations omitted). Defendant argues that a valid contract for Horton's reinstated policy never existed, because Horton failed to disclose on her reinstatement application that she had leukemia.

Section 27-17-7(a) of the Alabama Code provides in pertinent part:

> Misrepresentations, omissions, concealment of facts and incorrect statements shall not prevent a recovery under the policy or contract [for insurance] *unless* either [sic]:
>
> (1) Fraudulent;
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would either [sic] not have issued the policy or contract, or would not have issued a policy or contract at the premium rate as applied for, or would not have issued a policy or contract in as large an amount[,] or would not have provided coverage with respect to the hazard resulting in the loss if the true facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Ala. Code § 27-14-7 (1975) (1998 Replacement Vol.) (emphasis supplied). This provision has been construed to allow an insurance company the right to rescind or avoid a policy upon discovery of the applicant's *material* misrepresentation. *See, e.g.,*

*Stephens v. Guardian Life Insurance Co. of America,* 742 F.2d 1329, 1333 (11th Cir. 1984) (applying Alabama law).

Even an unintentional misrepresentation by the applicant can void the policy, as long as the misrepresentation is *material. Bennett v. Mutual of Omaha Insurance Co.,* 976 F.2d 659, 661 (11th Cir. 1992) (applying Ala. Code § 27-14-7). The materiality of a misrepresentation generally is a jury question. *Id.* (citing *Federal Kemper Life Assurance Co. v. First National Bank,* 712 F.2d 459, 462 (11th Cir. 1983); *State Farm Insurance Co. v. Whiddon,* 515 So. 2d 1266 (Ala. Civ. App. 1987)). Nonetheless, "Alabama courts do take judicial notice that certain conditions [including cancer] are commonly known to be life threatening; *their existence is material as a matter of law.*" *Bennett,* 976 F.2d at 661 (emphasis supplied) (citing *New York Life Insurance Co. v. Zivitz,* 10 So. 2d 276, 283 (Ala. 1942)).

Plaintiff does not dispute that Horton's affliction with leukemia was material to defendant's decision to accept the risk of insuring her. She also does not dispute that defendant would not in good faith have issued the policy to Horton, if Horton had disclosed her illness on the reinstatement application.[24] Plaintiff only argues that, despite Horton's material misrepresentations, defendant still is required to pay

---

[24]The assertion that defendant would not in good faith have issued the policy to Horton if Horton had disclosed her illness on the reinstatement application was made by Debra Anderson, the Group Coordinator of defendant's Underwriting Department. *See* Anderson Affidavit, at ¶ 12.

plaintiff's claim for policy benefits because its agent, Pearline Douglas, was negligent in processing Horton's application for reinstatement.

Plaintiff alleges that she originally contacted Douglas no later than February 4, 1999, to begin the reinstatement process. Approximately three weeks to one month later, Horton informed plaintiff that Douglas still had not arranged a meeting with her. Plaintiff called Douglas at that time to remind her that she and Horton wanted to reinstate the policy. However, Douglas did not take any action until April 9, 1999, when she traveled to Horton's home to complete the reinstatement application.[25] Plaintiff asserts that Douglas' "delay of a month or more to reinstate the policy, during which time [Horton] was diagnosed with leukemia, constitutes negligence. Had [Douglas], with due diligence, met with [Horton] and completed the reinstatement paperwork, the policy arguably would have been valid."[26] Plaintiff also asserts that defendant should be held liable for Douglas' negligence, because Douglas was acting as defendant's general agent when she handled Horton's application.

The relevant Alabama case law seems, at first blush, to support plaintiff's position. In *National Life and Accident Insurance Co. v. Allen,* 234 So. 2d 567 (Ala.

---

[25]Plaintiff testified at her deposition that she knew the application was made at an earlier date, *before her sister was diagnosed with leukemia.* Jones Deposition, at 133-34, 37-38. However, plaintiff abandoned this argument by unequivocally stating in her brief that Douglas traveled to Horton's home *on April 9* to reinstate the policy.

[26]Brief in opposition to summary judgment, at unnumbered page 5.

-10-

1970), Allen certified on his application for a life insurance policy with National Life and Accident Insurance Company ("National") that he was free from all diseases, except for being legally blind, and that he had not consulted a physician, other than for his eyes, in the past five years. *Id.* at 569. In reality, however, Allen suffered from cirrhosis of the liver, a peptic ulcer, and a heart condition; he recently had been treated by a physician; and he was hospitalized the year before the application was filed. *Id.* When Allen died, National denied the beneficiary's claim for policy benefits, asserting the material misrepresentations on Allen's application as a defense to its obligation to pay. *Id.* The court discussed an exception to an insurance company's right to void a policy based on material misrepresentations in the policy application.

> We think it is clear that our cases hold that an insurance company cannot defend a suit on its policy on the same grounds that there are misrepresentations in the policy application, if the misrepresentations are the fault of its own agent without participation by the insured or the beneficiary, even where the application is a part of the policy.
>
> . . .
>
> Where an insurance agent does not ask questions of the insured but writes answers as though he had done so, the insurer cannot deny coverage on this basis. . . . When without any fault on the part of the insured through neglect of the insurer's agent, misstatements are made in the application, the insurer cannot defend on this ground. . . . Further, misrepresentation resulting solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured, are [sic] not available to the insurer although the company issuing the insurance acts on the application as presented and without knowledge of the agent's malfeasance.

*Id.* at 570 (citations omitted).

Because of Allen's eyesight problems, he could not see well enough to read the small print on the application. The court concluded it was "obvious" that Allen did not fill out any part of the application, except to sign his name. *Id.* at 569-70. Because Allen could not read the application, he "was obviously at the mercy of the agent." *Id.* Thus, the court held that the misrepresentations in the policy application were attributable solely to the agent, without any participation or fault on Allen's part, and that National could not justify its denial of benefits under the policy based on the misrepresentations in the policy application. *Id.*

Similarly, in *Standard Plan, Inc. v. Tucker,* 582 So. 2d 1024 (Ala. 1991), the court held that Standard Plan was not entitled to rescind the binder it had issued to Tucker on the basis of a material misrepresentation of fact in the policy application. Tucker had contacted an independent insurance agent to obtain an auto insurance policy from Standard Plan. The agent completed the application form for Tucker, signed Tucker's name to the form, and issued Tucker a temporary binder. However, the agent never showed the completed form to Tucker before she submitted it to Standard Plan. *Id.* at 1026. In filling out the form, the agent failed to list one automobile accident in which Tucker recently had been involved, and in which he was at fault. *Id.* The agent also delayed seven days in forwarding the application to

Standard Plan, which violated the usual Standard Plan procedure requiring all applications to be forwarded within seventy-two hours. *Id.* at 1027.

After the seventy-two hour period had expired, but before Standard Plan actually received Tucker's application, Tucker was involved in another auto accident. *Id.* When Tucker filed a claim with Standard Plan, Standard Plan denied the claim, rejected Tucker's policy application, and rescinded the binder it had issued to Tucker, because the application had not listed Tucker's recent accident. *Id.* The court held that there was sufficient evidence for a jury to reasonably find that the insurance agent was negligent, both in failing to forward Tucker's application within seventy-two hours, and in failing to list the recent accident on the application. There also was sufficient evidence for a jury to reasonably find that the so-called "independent" agent actually was a general agent for Standard Plan. Thus, Standard Plan could be held liable for the agent's negligence, and it was not entitled to rescind the binder it issued to Tucker. *Id.* at 1030.

Plaintiff is correct in pointing out that these cases provide an exception, based on an agent's negligence, to the rule that an insurance company may justifiably deny benefits under a policy due to misrepresentations on the policy application. Even so, upon a careful reading of the cases, the court concludes that they are distinguishable. Plaintiff alleges that Douglas was negligent because she delayed more than a month

in meeting with Horton to complete the reinstatement application. However, the Alabama cases do not allow an insurer to be held liable for this such negligence by an agent. Instead, the cases focus on the agent's negligence in filling-out, or completing, the application itself. In both *Tucker* and *Allen*, the applicant could not be held responsible for the misrepresentations on the application, because he either did not or could not see what was written on the application before it was submitted to the company.[27] Thus, the misrepresentations were *solely* the result of the agent's negligence, without any participation, knowledge, or fault on the part of the applicant.

Here, in contrast, Horton signed the reinstatement application herself. There is no indication that Douglas completed the application without Horton's knowledge, or that she answered any of the questions without Horton's input. Indeed, the evidence clearly reflects that Douglas asked Horton each question on the application form, and carefully marked the answers to reflect Horton's responses. There also is no indication that Horton had a disability or infirmity that would have prevented her from reading and understanding the application form before she signed it. Thus, the court cannot hold that the misrepresentations about Horton's health on the application

---

[27]The court recognizes that the agent in *Tucker* also was negligent because of her delay in forwarding Tucker's application to the insurance company. However, it was only the delay, *coupled with* the agent's failure to correctly fill out the application form, that prevented the insurance company from being able to deny Tucker's claim. *Tucker* cannot be read to support the proposition that an agent's delay in submitting an application, *standing alone,* can render an insurance company responsible for paying a claim, in spite of material misrepresentations on the policy application.

resulted "solely from an act or oversight of the soliciting agent taking the application, without the knowledge of the insured . . . ." *Allen,* 234 So. 2d at 570.

The court regrets that, during the time period between the date on which plaintiff initially contacted Douglas about reinstating the lapsed policy, and the date on which Douglas finally met with Horton to fill-out the reinstatement application, Horton was diagnosed with a medical condition that rendered her uninsurable. Nevertheless, plaintiff has offered no authority, and the court has found none, to persuade the court that defendant must be held responsible for Douglas' delay.[28]

Accordingly, based on Alabama Code § 27-17-7(a), defendant was entitled to void Horton's policy due to the material misrepresentations contained in the policy application. Thus, no valid contract existed with regard to the policy, and summary judgment is due to be granted on plaintiff's breach of contract claim.

2.   **Bad faith**

Under Alabama law, an actionable tort of bad faith arises from an insurer's intentional refusal to settle a direct claim where there is either no lawful basis for the refusal, coupled with actual knowledge of that fact, or intentional failure to determine

---

[28]The court also notes that Douglas is not the only person who caused a delay in the reinstatement process. Horton's policy lapsed in August of 1998, and plaintiff did contact Douglas until February of 1999, approximately six months later, to seek reinstatement.

Further, the court need not determine whether Douglas was acting as a general agent for defendant when she reinstated Horton's policy. Even if Douglas was a general agent, her delay in reinstating Horton's policy would not prevent defendant from voiding the policy due to Horton's material misrepresentations.

whether there was any lawful basis for such refusal. *See Chavers v. National Security Fire & Casualty Co.*, 405 So. 2d 1, 7 (1981). The plaintiff in a so-called "bad faith refusal" case has the burden of proving:

> (a)   an insurance contract between the parties and a breach thereof by the defendant;
>
> (b)   an intentional refusal to pay the insured's claim;
>
> (c)   the absence of any reasonably legitimate or arguable reason for that refusal (the absence of a debatable reason);
>
> (d)   the insurer's actual knowledge of the absence of any legitimate or arguable reason;
>
> (e)   if the intentional failure to determine the existence of a lawful basis is relied upon, the plaintiff must prove the insurer's intentional failure to determine whether there is a legitimate or arguable reason to refuse to pay the claim.
>
>    In short, plaintiff must go beyond the showing of nonpayment and prove a *bad faith* nonpayment, a nonpayment without any reasonable ground for dispute. Or, stated differently, the plaintiff must show that the insurance company had no legal or factual defense to the insurance claim.

*National Security Fire & Casualty Co. v. Bowen*, 417 So. 2d 179, 183 (Ala. 1982).

As discussed in Section III(A)(1), *supra,* there was no valid contract between the parties, and no breach thereof by defendant. Further, defendant had a legitimate reason for denying plaintiff's claim: *i.e.,* Horton's material misrepresentations about the actual state of her health. Thus, summary judgment is due to be granted on

plaintiff's bad faith claim. *See National Security Fire & Casualty Co. v. Vintson*, 414 So. 2d 49, 52 (Ala. 1982) ("[U]nless the plaintiff is entitled to recover on the contract, a bad faith claim cannot be maintained.").

**B.    Defendant's Counterclaim**

In its counterclaim, defendant seeks a judgment declaring that: (1) Horton died within the contestability period of the policy; (2) defendant was entitled to contest payment of the policy proceeds; (3) Horton obtained reinstatement of the policy by fraudulent means; (4) the misrepresentations, concealment, or incorrect statements of fact in the application were material to defendant's acceptance of the risk of insuring Horton; (5) defendant in good faith would not have reinstated the policy if Horton had disclosed the true facts; and (6) plaintiff is entitled to no further recovery under the policy.

Defendant's counterclaim presents the same issues as plaintiff's underlying breach of contract and bad faith claims. Neither party provides any separate argument in support of, or in opposition to, the motion for summary judgment on defendant's counterclaim. Thus, for the same reasons that summary judgment is due to be granted on plaintiff's breach of contract and bad faith claims, and based on the facts asserted herein, defendant's motion for summary judgment on its counterclaim for a declaratory judgment is due to be granted in its entirety.

## IV. CONCLUSION

Based on the foregoing, defendant's motion for summary judgment will be granted, with respect to both plaintiff's underlying claims, and to defendant's counterclaim. An appropriate order will be entered contemporaneously herewith.

DONE this **31st** day of March, 2004.

_____
United States District Judge